O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLOMON AVERY, | ) NO. EDCV 12-2136-VBF (MAN) |
|       Plaintiff, | ) MEMORANDUM AND ORDER DISMISSING |
|       v. | ) COMPLAINT WITH LEAVE TO AMEND |
| Brenda M. Cash, et al, | ) |
|       Defendants. | ) |

    Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, on December 11, 2012 ("Complaint").

    Congress has mandated that courts perform an initial screening of civil rights actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The Court "shall" dismiss a prisoner civil rights action if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit.

1  28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  In screening such a
2  complaint, the Court must construe the allegations of the complaint
3  liberally and must afford the plaintiff the benefit of any doubt.  *See*
4  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.
5  1988).  A *pro se* litigant must be given leave to amend his or her
6  complaint, unless it is absolutely clear that the deficiencies of the
7  complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d
8  1446, 1448 (9th Cir. 1987).
9
10  In screening a *pro se* civil rights complaint, the Court must
11  construe its allegations liberally and must afford the plaintiff the
12  benefit of any doubt.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.
13  2012).  The standard applicable on screening is the standard for failure
14  to state a claim under Rule 12(b)(6) of the Federal Rules of Civil
15  Procedure.  *Id*.  The complaint need not contain detailed factual
16  allegations, but must contain sufficient factual matter to state a claim
17  for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S.
18  662, 678, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly,
19  550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  If a complaint is
20  dismissed, a *pro se* litigant must be given leave to amend unless it is
21  absolutely clear that the deficiencies of the complaint cannot be cured
22  by amendment.  Karim-Panahi, 839 F.2d 621, 623 (9th Cir. 1988); Noll v.
23  Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).
24
25  **ALLEGATIONS OF THE COMPLAINT**
26
27  Plaintiff is incarcerated at the California Institution for Men
28  ("CIM"). (Complaint at 2.)  Defendants are the following CIM officials:

2

1  Warden Brenda Cash; Dr. Lucius Hill; Dr. Yee; Dr. Le; and Appeals
2  Coordinator Gill.  (*Id.* at 3-4.)

4  Plaintiff's claims arise out of the medical treatment of his foot.
5  According to his Complaint allegations and the attached exhibits, in
6  2009, plaintiff had foot surgery to remove pellets remaining in his left
7  foot after a 1992 gunshot.  Plaintiff then experienced fungus build-up
8  in his toes.  Dr. Hill took plaintiff to his outside clinic and
9  performed a procedure to scrape off the fungus.  The procedure resulted
10 in an infection, which plaintiff contends was gangrene, and on July 10,
11 2010, Dr. Hill had to amputate some of plaintiff's toes.  Plaintiff
12 ascribes the loss of his toes to Dr. Hill's failure to follow proper
13 sterilization procedures.  (Complaint at 5a.)

15 Plaintiff further contends that between September or October 2009,
16 and July or August 2010, defendants failed to provide him with proper
17 medical care and were indifferent to his pain. (Complaint at 5, 5a-5d.)
18 He also contends that inmates of other races did not have to wait as
19 long as he did for medical care, even though his need for it was
20 greater.  (*Id.* at 5b.)  He complains that Warden Cash failed to respond
21 to his requests for medical care and that appeals coordinator Gill
22 "screened out" or failed to respond to his grievances and did not return
23 his family's calls.  (*Id.* at 5, 5d.)  Plaintiff asserts:  Eighth
24 Amendment claims against Drs. Hill, Yee, and Le; due process claims
25 against all defendants; equal protection claims against defendants Cash,
26 Yee, and Le; and a claim against Dr. Yee for failure to provide him with
27 an accommodation under the Americans with Disabilities Act ("ADA").
28 (*Id.* at 5b.)

3

Plaintiff seeks damages and "life-time medical coverage." (Complaint at 6.)

## DISCUSSION

**I. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM.**

Plaintiff asserts Eighth Amendment claims against defendants Hill, Yee, and Le.

**A. Applicable Law**

The state must provide medical care to prisoners, because their incarceration has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Failure to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs. Estelle, 429 U.S. at 104, 97 S. Ct. at 291. A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need; and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(*en banc*). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin 974 F.2d at 1059.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." Id. at 1059; see Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106, 97 S. Ct. at 292.

As a general matter, a difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). An inmate asserting a deliberate indifference claim against medical personnel must show that they chose, in conscious disregard of an excessive risk to the inmate's health, a course of treatment medically unacceptable under the circumstances. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

**B.  Analysis**

Plaintiff asserts the following Eighth Amendment claims: (1) a

claim against Dr. Hill arising from the 2010 medical procedure to remove plaintiff's foot fungus; and (2) a claim against all three physician defendants for failure to provide plaintiff with adequate medical care between September or October of 2009, and July or August of 2010. The Court will address these claims separately.

### 1. Hill

Plaintiff contends that Dr. Hill failed to follow correct sterilization procedures during the medical procedure to remove plaintiff's foot fungus, and thus caused plaintiff to suffer a serious infection, which ultimately necessitated the amputation of toes on his left foot. (Complaint at 5a, Exs.)

Plaintiff has not alleged deliberate indifference on the part of Dr. Hill. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106, 97 S. Ct. at 292. Even if Dr. Hill committed medical malpractice, plaintiff has not alleged that Hill knew that he was not following medically acceptable procedures and consciously decided not to follow them despite the risk to plaintiff's health. Toguchi, 391 F.3d at 1057. Plaintiff's conclusory reference to Hill's "wanton disregard" of correct medical procedure is not a substitute for specific factual allegations from which Hill's mental state could be inferred. *See* Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

///

///

///

### 2. **Hill, Yee, and Le**

Plaintiff further contends that, between October 2009, and August 2010, Dr. Hill failed to provide him with basic medical care and caused him to suffer great pain. (Complaint at 5a.) Plaintiff has not described in what way his medical care during this period was deficient, and in what way Dr. Hill was responsible for the deficiency. The lack of specific allegations is particularly glaring, given that the time frame alleged by plaintiff spans the period before the medical procedure that led to the infection, the period between the procedure and the amputation, and a month after the amputation. Plaintiff has not, therefore, set forth a factual basis for a plausible Eighth Amendment claim against Dr. Hill. *See* Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

A similar deficiency mandates the dismissal of plaintiff's claims against defendants Dr. Yee and Dr. Le. Plaintiff alleges that: Dr. Yee failed to provide him with adequate medical care between September 9, 2009, and July 2010, when plaintiff was suffering from pain from the pellets in his foot; and Dr. Yee failed to provide him with medical care between September 9, 2009, and August 2010. Plaintiff, however, does not describe the deficiencies in his medical care for which he seeks to hold Drs. Yee and Le responsible, nor does he allege why the two should be liable. Were they his physicians? What didn't they do and what should they have done? Plaintiff simply refers the Court to the exhibits to his Complaint. While such attachments are often helpful to flesh out the factual allegations of a Complaint, they are not a substitute for the "short and plain" statement of a claim mandated by Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiff,

7

1  therefore, has not alleged plausible Eighth Amendment claims against Dr.
2  Yee and Dr. Le.  *See* Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

4  Accordingly, plaintiff's Eighth Amendment claims must be dismissed.

6  **II.   PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM.**

8  Plaintiff asserts due process claims against defendants Cash, Yee,
9  Le, and Gill.

11  Plaintiff does not assert a factual basis for asserting due process
12  claims against defendants Yee and Le, and the Court does not discern
13  any.  *See* Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th
14  Cir. 1988)(claim is subject to dismissal when it does not set forth a
15  cognizable legal theory, or facts to support a cognizable legal theory).

17  Plaintiff's due process claim against appeals coordinator Gill
18  arises out of his handling of plaintiff's grievances.  (Complaint at
19  5d.)  A prisoner has no constitutional right to an administrative appeal
20  procedure.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)
21  ("inmates lack a separate constitutional entitlement to a specific
22  prison grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
23  1988)("There is no legitimate claim of entitlement to a grievance
24  procedure.").  Plaintiff cannot state a due process claim against Gill,
25  or any other prison official, based solely on the official's

8

participation in the administrative appeal process.[1]  Plaintiff's due process claim against Warden Cash also arises out of her handling of his administrative grievances, and thus fails for the same reason as his claim against Gill.[2]

Accordingly, plaintiff's due process claims must be dismissed.

### III. **PLAINTIFF FAILS TO STATE AN EQUAL PROTECTION CLAIM.**

Plaintiff asserts equal protection claims against defendants Cash, Yee, and Le.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all

---

[1] *See* Wise v. Washington State Dept. of Corrections, 244 Fed. Appx. 106, 108, 2007 WL 1745223, at *1 (9th Cir., June 5, 2007)("The district court properly dismissed Wise's claim that defendants denied his grievances because an inmate has no due process rights regarding the proper handling of grievances."); Morgan v. Chakmakian, 2011 WL 839136, at *5 (C.D. Cal., Jan. 26, 2011)("a prisoner has no constitutional right to an effective grievance or appeal procedure, and the mere participation of prison officials in plaintiff's administrative appeal process is an insufficient basis on which to state a federal civil rights claim against such defendants"), *adopted by* 2011 WL 837738 (C.D. Cal., Mar. 3, 2011); Wright v. Shapirshteyn, 2009 WL 361951, at *3 (E.D. Cal., Feb. 12, 2009)(noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983").

[2] If plaintiff is seeking to hold Cash responsible for deficiencies in his medical care, his claim arises under the Eighth Amendment.

9

persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985)(internal quotation marks and citation omitted). The threshold allegation must be that plaintiff was similarly situated to others who received different treatment. See Fraley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993). To state a Section 1983 claim for violation of the Equal Protection Clause, plaintiff must plead intentional unlawful discrimination or allege facts from which discriminatory intent may be inferred. Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status. Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998).

Here, plaintiff alleges only that inmates of other races received medical treatment faster than he did, even though his condition was worse. (Complaint at 5b.) These conclusory allegations are insufficient to allege either differential treatment, *i.e.*, that plaintiff was treated differently from others similarly situated, or discriminatory animus on the part of any of the defendants, *i.e.*, that they delayed plaintiff's medical treatment on account of his race.

As for Warden Cash, plaintiff contends that she violated his equal protection rights by failing to address his administrative complaints in a timely manner. (Complaint at 5a.) Again, there are no allegations from which the Court could infer that Cash intentionally treated plaintiff differently than other similarly situated inmates based on his race.

Accordingly, plaintiff's equal protection claims must be dismissed.

### IV. PLAINTIFF FAILS TO STATE AN ADA CLAIM.

Plaintiff asserts a claim under the ADA against Dr. Yee. (Complaint at 5B.)

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S. Ct. 1952, 1955 (1998); *see also* Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1021 (9th Cir. 2010). To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability. Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004). Moreover, a plaintiff seeking damages for an ADA violation must show deliberate indifference to his rights under the ADA. *See* Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

1    Plaintiff contends that he failed receive an ADA accommodation for
2  his post-surgery disability. (Complaint at 5b.) However, his
3  allegations suggest that he is merely complaining that he did not
4  receive a walking aid until his family called to complain. (*Id.*)
5  Moreover, the exhibits to the Complaint reflect that plaintiff has been
6  issued a walker. Plaintiff, therefore, has not alleged an ADA
7  violation.

9    Accordingly, plaintiff's ADA claim must be dismissed.

11 **V.   PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST DEFENDANTS**
12 **IN THEIR OFFICIAL CAPACITIES.**

14    Plaintiff has sued all defendants in their official as well as
15 individual capacities. (Complaint at 3-4.)

17    Official capacity claims against state officials are merely another
18 way of pleading a claim against the state itself. *See* Will v. Michigan
19 Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312
20 (1989)("[A] suit against a state official in his or her official
21 capacity is not a suit against the official but rather is a suit against
22 the official's office. As such, it is no different from a suit against
23 the State itself.")(*internal citation omitted*). The Eleventh Amendment
24 prohibits federal jurisdiction over claims against a State unless the
25 State has consented to suit or Congress has abrogated its immunity.
26 Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104
27 S. Ct. 900, 907-08 (1984). The State of California has not consented
28 to be sued under Section 1983 in federal court, and the Supreme Court

has held that Section 1983 was not intended to abrogate a State's Eleventh Amendment immunity. <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see* <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 n.17, 105 S. Ct. 3099, 3107 n.17 (1985). In addition, the Supreme Court has held that a state official sued in his or her official capacity is not "a person." <u>Will</u>, 491 U.S. at 71 & n. 10, 109 S. Ct. at 2312 & n.10.

Defendants are officials of the California Department of Corrections and Rehabilitation, which is an arm of the State of California and, thus, is entitled to Eleventh Amendment immunity. Plaintiff's official capacity claims for damages under Section 1983. therefore, are barred by the Eleventh Amendment.[3] Plaintiff may only sue defendants under Section 1983 in their individual capacities.

With respect to plaintiff's ADA claim, the converse is true. The Ninth Circuit has held that Title II of the ADA permits prisoners to bring actions against state officials in their official capacities, but not in their individual capacities. *See* <u>Miranda B. v. Kitzhaber</u>, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (holding that "Title II's statutory language does not prohibit . . . injunctive action against state officials in their official capacities"). Thus, if plaintiff is able to rectify the deficiencies of his ADA claim, he should assert that claim against Dr. Yee in his official capacity.

---

[3] The Eleventh Amendment does not bar official capacity claims against state officials for prospective injunctive relief to end a continuing violation of federal law. <u>Ex parte Young</u>, 209 U.S. 123, 155-57, 28 S. Ct. 441, 452-53 (1908); <u>Doe v. Lawrence Livermore Nat'l Lab</u>., 131 F.3d 836, 839 (9th Cir. 1997). Plaintiff, however, is not seeking injunctive relief.

13

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the Complaint described herein. The First Amended Complaint, if any, shall be complete in itself. It shall not refer in any manner to the original Complaint.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: January 16, 2013

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE